Estate of C. M. Sutton, Deceased v. Commissioner.
Estate of C. M. Sutton v. Commissioner
Docket No. 2766.
United States Tax Court
1946 Tax Ct. Memo LEXIS 236; 5 T.C.M. (CCH) 213; T.C.M. (RIA) 46070; March 21, 1946
Jerrell Babb, Esq., and Wendell P. Hubbard, Admr., for the petitioner. Byron M. Coon, Esq., for the respondent. ARNOLD
Memorandum Findings of Fact and Opinion ARNOLD, Judge: The Commissioner determined income tax deficiencies for 1937 and 1941 in the respective amounts of $90.50 and $945.43. The issues are (1) whether certain dividends paid over in 1937 and 1941 were constructively received during the years in which such dividends were declared and set aside; and (2) whether petitioner is entitled to deduct attorney fees of $500 and administrator fees of $500 in 1941 for extraordinary services rendered to the estate. Findings of Fact Petitioner is an estate being probated in the Superior Court of California in Los Angeles County. The income tax returns for the taxable years and for 1936, 1938, 1939 and 1940 were filed with the collector for the southern district of California by the administrator of the estate on March 16, 1942. C. M. Sutton died intestate July 30, 1934, leaving an estate of 90 1/2 shares of capital stock of the Luling Oil and Gas Company of San Antonio, Texas, (hereinafter referred to as Luling). He left surviving him his wife, *239 Rosa Longfellow Sutton, his daughter, Ione Sutton Good, and a niece, Grace Powell of San Francisco. After C. M. Sutton died one Hedwig Carolynne Muller, as sole beneficiary offered a holographic will for probate. The validity of this will was attacked by decedent's daughter. On or about November 1, 1934 the Superior Court declared the holographic will a forgery and denied probate thereof. Sutton and his wife had been separated for some time prior to his death. She had filed a suit for divorce. In a cross complaint he asked for an annulment of the marriage. The trial court gave decedent judgment annuling the marriage. Rosa Sutton appealed and in the latter part of 1935 the appellate court reversed the decree of annulment. Wendell P. Hubbard was appointed administrator of decedent's estate in August 1936 upon application of the widow. After Sutton's death Luling placed the dividends declared on his stock in a separate fund and held them in suspense until it could determine who was entitled thereto. Following his appointment as administrator Hubbard advised Luling thereof, that he had filed a bond for $7,500 and that he was entitled to all dividends previously declared. After considerable *240 correspondence with George Cannon, the attorney and secretary of Luling, Hubbard, in March 1937, received a check for $3,620 from Luling made out to him as registee of the Superior Court. The check covered dividends declared for the years and in the amounts following on decedent's stock: 1934 - $905; 1935 - $1,810; March 1936 - $905. Hubbard endorsed the check first as "registee" and then as "administrator" and the check cleared. About a year later Hubbard wrote Luling and asked if other dividends had been declared. He was advised that other dividends had been declared but that Luling was not yet satisfied that Hubbard had authority to collect the dividends. Hubbard was also advised by Luling that decedent's niece was claiming an interest in the stock based on a promise made by decedent during his lifetime. Following a considerable correspondence without appreciable results Hubbard employed a Texas attorney, Judge Childers, to collect the dividends on decedent's stock. After Judge Childers conferred with Luling officials, its attorney, Cannon, called at Hubbard's office with a Los Angeles attorney to discuss the situation. At this conference Cannon checked Hubbard's files carefully *241 and requested the latter to furnish him with photostatic copies of certain documents, which were furnished. Further correspondence resulted with some additional request for information being made each time. Hubbard then wrote Luling a letter in which he questioned the honesty of the officers. Suit was being prepared at or about this time to attach the funds of Luling for the dividends which had been declared and set aside but not paid. In September, 1941 Luling sent Hubbard an audit of the dividends declared and set aside, which it offered to pay if the estate waived any claim for interest. In October 1941, the dividends declared in December 1936 and in 1937, 1938, 1939 and 1940, amounting to $7,692.50, less $250 attorney's fee to Judge Childers, were paid to Hubbard as administrator of decedent's estate. Luling advised decedent's niece of the payment of the dividends to the administrator of decedent's estate. After receiving the dividends the administrator paid Jerrell Babb a $500 attorney fee and himself a $500 administrator's fee for extraordinary services rendered the estate in connection with the collection of these dividends. Such fees had nothing to do with the statutory fees *242 payable to the attorney and administrator of the estate. Petitioner deducted the fees on its 1941 income tax return. Luling, after declaring the dividends in question, set them aside in a special fund. Its reason for not paying the dividends sooner was that it wanted to be sure that payment was made to the party entitled to receive the dividends. Petitioner was on the cash receipts and disbursements basis. The dividends were actually received in 1937 and 1941. Petitioner did not constructively receive the dividends declared and set aside in the years prior to the years of actual receipt. In determining the deficiencies herein the respondent excluded dividends from petitioner's income for 1936, 1938, 1939 and 1940, and determined an overassessment for each of such years. Opinion Petitioner seeks to apply the doctrine of constructive receipt to the facts herein. The general rule as to constructive receipt is found in section 19.42-2, Regulations 103, and Article 42-2, Regulations 94, the provisions of which are identical.[1] Petitioner's contention that the dividends were declared and set aside in a special fund is fully supported by our findings; Luling did set apart the *243 dividends in the year declared. It is equally clear, however, that Luling held the dividends so set aside until it was demonstrated who had the right to them and to whom they could safely be paid. Except for the years 1937 and 1941 the administrator was neither in receipt of dividends nor had he demonstrated the right at any time to draw upon the dividends credited to the special fund. In view of the vain efforts made by the administrator to collect the dividends in the years prior to their actual receipt, we believe no valid argument can be made for the constructive receipt doctrine. . *244 Under the general rule the dividends (1) must have been credited to or set apart for the taxpayer without substantial limitation or restriction as to time or manner of payment; (2) the dividends must have been credited and set apart for the taxpayer without condition upon which payment is to be made; and (3) the dividends must be made available to the taxpayer so that they may be drawn down at any time and its receipt brought within its control and disposition. The most that taxpayer can say here is that the dividends were set apart and held in a special fund not specifically for it but for whoever established the right thereto. Luling continuously interposed objections to releasing the dividends until petitioner supplied it with the information requested. Final payment in 1941 was procured only after threat of suit, and a charge against the integrity of Luling's officers. To say that under such circumstances the dividends were available to petitioner, or that they were credited or set apart without any substantial limitation, restriction, or condition on the payment thereof, [2] would require us to close our eyes to the realities. The dividends were not subject to petitioner's unfettered *245 command nor was petitioner free to enjoy them at its option. . Petitioner evidently did not consider the dividends were constructively received during the years 1934 to 1940, inclusive, as it filed no returns for those years. Furthermore, the doctrine of constructive receipt "is an artificial concept which must be sparingly applied." . It is at most "a conceptual device whose 'primary function is to bring about a fair and reasonable application of the income tax. Its application may vary with varying circumstances and its ordinary tests may fail in an extraordinary situation.' ." , *246 affirmed . The circumstances here do not warrant application of any artificial concept; the dividends were income in the years of receipt by the taxpayer. . Petitioner's second contention with respect to the dividend issue is that the dividends declared and set aside in 1934 and 1935 are not taxable in any event. This contention is apparently premised upon the dividend credit allowed for normal tax purposes by sections 163 and 25, Revenue Act of 1934 and upon the fact that its 1934 and 1935 income of $905 and $1,810, respectively, is too small for surtax purposes. It is urged that since these dividends were taxable in 1934 and 1935 their receipt in 1937 does not thereby make them taxable, even though the Revenue Act of 1936 omitted the dividend credit granted by the Revenue Act of 1934. A taxpayer on the cash receipts and disbursements basis accounts for income in the year of receipt. Section 42, Revenue Act of 1936. It was to escape this rule that petitioner herein first sought to invoke the doctrine of constructive receipt, which we rejected. The further contention with respect to the years 1934 and 1935 must *247 likewise be rejected for the dividends in our opinion constituted income "when they came to hand." ; ; sections 115 and 22 (a), Revenue Act of 1936; Art. 115-1, Regulations 94; Art. 42-1, Regulations 94. The second issue is whether the special amounts paid to the administrator and attorney of the decedent's estate in 1941 are deductible from gross income. Respondent contends that these two $500 disbursements are charges against the gross estate and are not deductible from the income of the estate. Petitioner contends that the fees were paid for services directly connected with obtaining or collecting income of the estate and therefore are deductible from gross income. Apparently petitioner relies upon section 23 (a) (2) of the Code, relating to non-trade or non-business expenses, which was added by section 121 (a), Revenue Act of 1942, and made applicable to the taxable year 1941 by section 121 (d) of the Revenue Act of 1942. The 1942 Act also provides, by section 161 (a) thereof, that section 162 of the Code, relating to net income of estates and trusts, should be amended by inserting a new subsection, *248 viz., 162 (e), for the purpose of preventing double deductions. The amendment provides that "(e) Amounts allowable under section 812 (b) as a deduction in computing the net estate of a decedent shall not be allowed as a deduction under section 23, except subsection (w), in computing the net income of the estate unless there is filed, within the time and in the manner and form prescribed by the Commissioner, a statement that the items have not been claimed or allowed as deductions under section 812(b) and a waiver of the right to have such items allowed at any time as deductions under section 812(b)." Section 161(b) of the Revenue Act of 1942 makes section 162(e) of the Code applicable to non-trade and non-business expenses of the taxable year 1941 herein. The record indicates that decedent's estate was in process of administration in 1941. It does not appear that a claim has been or will be made for the two $500 fees against the estate. If allowed as a deduction from the gross estate and as a deduction from 1941 gross income the estate would receive the benefit of a double deduction. Congress recognized this danger as inherent in section 23 in connection with computing the net income *249 of a decedent's estate. Section 162 of the Code was accordingly amended by Congress, by section 161 (a) of the Revenue Act of 1942, for the specific purpose of denying double deductions to estates or trusts. Under the amendment petitioner is not entitled to a deduction under section 23 unless it files a statement respecting the items as prescribed by the Commissioner showing that the items have not been claimed or allowed against the estate under section 812(b) and a waiver of its rights under such section. It does not appear from the evidence herein that petitioner has met this statutory requirement. Were the facts such as to otherwise justify the deductions, petitioner's failure in this regard is fatal to the right to the deductions here. We therefore approve respondent's disallowance of the deductions. Decision will be entered for the respondent. Footnotes
1. Sec. 19.42-2. Income not reduced to possession. - Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * *↩
2. In , the taxpayer received a check in full payment for his services in 1941. He held the check without cashing it until he obtained substantial assurance in 1942, that the amount offered in payment was no longer subject to the condition. We held there was no constructive receipt in 1941. See also, , promulgated February 18, 1946.↩